UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5: 15-114-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| NAVARIUS SAVELL WESTBERRY, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Navarius Westberry's motion to withdraw his guilty plea.  [Record No. 159]  The motion will be denied for a number of reasons, including that: (i) Westberry had ample opportunity to consider the terms and conditions of the Plea Agreement offered by the government before he signed the document and entered a guilty plea; (ii) at the time Westberry entered his guilty plea he was not under duress, but fully aware of the consequences of his actions; (iii) Westberry's decision to plead guilty was deliberate, knowing and voluntary; (iv) Westberry's claim that he was under the influence and unable to understand his decision to enter a guilty plea is not supported by the record or the Court's observations of the defendant during the course of these proceedings; and (v) Westberry's current actions are a calculated attempt to avoid punishment for acknowledged crimes, and not the result of a legitimate claim innocence or any other reason that would justify the relief sought.

In summary, when all relevant factors are considered, Westberry cannot establish a fair and just reason that would support withdrawal of his guilty plea.

-1-

# I.

On December 17, 2015, an indictment was filed charging Westberry with: (1) conspiring to knowingly and intentionally distribute a mixture or substance containing a detectable amount of heroin and a mixture or substance containing a detectable amount of fentanyl in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846 (the amount of heroin attributable to Westberry and his alleged co-conspirators was more than 100 grams); (2) conspiring to knowingly and intentionally distributing a mixture or substance containing a detectable amount of fentanyl which resulted in the death of one individual ("C.B.") in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846; and (3) conspiring to knowingly and intentionally distributing a mixture or substance containing a detectable amount of fentanyl, the use of which resulted in serious bodily injury to another individual ("A.S."), in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846.  [Record No. 1]

On August 15, 2016, Westberry signed a Plea Agreement and later pleaded guilty to Counts One and Two of the Indictment.  [Record No. 103]  Pursuant to the parties' agreement, the government stipulated that it would move to dismiss Count Three at the time of the sentencing hearing.  [*Id*.]  Westberry acknowledged that he and several co-defendants conspired to distribute heroin and a detectable amount of fentanyl, that he distributed the controlled substances himself, and that he provided the substances to others for distribution. [*Id*. at 2]  One of Westberry's co-defendants confirmed that she purchased a controlled substance from a co-defendant and re-distributed that substance to C.B., who later died of a drug overdose.  [*Id*. at 4]  An autopsy determined that the cause of C.B.'s death was acute fentanyl toxicity.  [*Id*.]  In addition to acknowledging that the substance distributed caused C.B.'s death, Westberry agreed that the total amount of heroin attributable to him and his co-

conspirators was 700 to 1,000 grams and that the amount of fentanyl attributable to him was at least 50 grams. [*Id.*] Despite these admissions, Westberry maintained that, at the time of distribution, he believed that the substance he was selling was heroin rather than fentanyl. [*Id.* at 4-5]

Westberry initially sought to enter a guilty plea in June 2016, but declined to do so during the hearing held on June 24, 2016.[1] At the time of this hearing, Westberry claimed to be "suffering from anxiety and [was] not ready to proceed . . . ." [Record No. 87] In addition to advising counsel that a competency evaluation could be requested if warranted, the Court granted the defendant's oral motion to continue the trial of the matter from July 12, 2016, until August 15, 2016. As the minute order from the June 24th hearing reflects, the Court delayed the trial at counsel's request to provide additional time for trial preparation and to allow the defendant additional time to consider the terms of the Plea Agreement. [Record No. 87] Further, the United States Marshal was directed to "maintain the defendant [at the] Fayette County Detention Center so that he has reasonable access to counsel." [*Id.*]

---

[1]   On June 22, 2016, Pamela Perlman, the attorney originally appointed to represent Westberry under the Criminal Justice Act ("CJA") filed a motion to extend the deadline for moving for re-arraignment until the close of business on June 23, 2016. At the time of this request, Westberry was being held at the Grayson County Detention Center. Counsel explained that the extension was necessary because a proposed Plea Agreement had been faxed to Westberry on Tuesday, June 21, 2016. Counsel confirmed delivery of the document the following morning with jail officials (June 22, 2016). However, at 2:00 Eastern Standard Time, the defendant indicated that he had not received the document. The proposed Plea Agreement was then re-faxed and counsel sought the one-day extension. [Record No. 79] The motion was granted. [Record No. 80]

On June 23, 2016, at 3:32 p.m., Westberry's attorney filed a motion for re-arraignment. [Record No. 81] That motion was granted on the same date and a change-of-plea hearing was scheduled for June 24, 2016, in place of the previously-scheduled pre-trial conference. [Record No. 82]

Approximately thirty days later, Westberry's counsel filed a second motion for re-arraignment, indicating that the defendant again wished to enter a guilty plea to Counts 1 and 2 of the Indictment.  [Record No. 99]  A hearing on the defendant's motion was then scheduled for August 15, 2016, and the trial scheduled to begin on that date was canceled.  [Record No. 100]  Thus, by the time of the second motion, Westberry had been moved to Lexington so that he could consult more effectively with counsel.  And as noted above, he had been given more than one month to consider the terms and conditions of the Plea Agreement proposed by the United States.

Much of the parties' negotiations seem to have centered on a provision of the Plea Agreement under which the government agreed that, in exchange for a guilty plea, it would not seek to enhance Westberry's punishment by filing a notice under 21 U.S.C. § 851. Paragraph 4 of the Plea Agreement provides:

> 4.  The United States agrees not to seek enhanced statutory punishments based on the Defendant's prior drug felony conviction and will not file a notice pursuant to 21 U.S.C. § 851 if the Defendant enters a guilty plea pursuant to the terms of this agreement.  This means that the Defendant will face the possibility of life imprisonment for Count 2 but not a sentence of *mandatory life imprisonment* that would result if the United States sought an enhanced punishment for Count 2.  The statutory punishment for Count 1 is imprisonment for not less than 5 years nor more than 40 years, a fine of not more than $5,000,000, and a term of supervised release of not less than 4 years.  The statutory punishment for Count 2 is imprisonment for not less than 20 years and not more than life imprisonment, a fine of not more than $1,000,000, and a term of supervised release of not less than 3 years.  A mandatory special assessment of $200 applies, and the Defendant will pay this $200.00 assessment to the U.S. District Court at the time of the sentencing hearing.

[Record No. 103]  In paragraph 5, the parties jointly made non-binding recommendations to the Court regarding: (i) the base offense levels for Counts 1 and 2; (ii) a three-level increase in the defendant's offense level calculation based on his role as a manager or supervisor of the

criminal activity; and (iii) a possible three-level reduction of the defendants offense level for acceptance of responsibility.  [*Id.*]

In response to questions from the Court, Westberry explained during the August 15, 2016, hearing that he has completed some college, graduated from high school, and was able to read and write.  [Record No. 109 at 4-5]  He also affirmed that he had discussed the case and the Plea Agreement with his attorney, was satisfied with her advice and representation, and that he fully understood the terms of the agreement.  [*Id.* at 9-10].  The Court explained the consequences of pleading guilty, and Westberry confirmed that he understood those consequences.  [*Id.* at 24]  The Court also discussed the nature of the charges and Westberry agreed that there was a factual basis to support the defendant's guilty plea.  [*Id.*]

In relevant part, Westberry acknowledged that he then understood that the substance that he was distributing contained fentanyl, although he continue to assert that he had been unaware of that fact at the time of distribution.  [*Id.* at 28]  Additionally, although Westberry did not know C.B., he stated that he understood that the substance that he and his co-conspirators distributed resulted in his death.  [*Id.* at 29]  At the conclusion of this hearing, Westberry confirmed that the factual basis for the charges as outlined in the Plea Agreement was true and correct and that he was entering a guilty plea because he actually was guilty of the charges.[2]  [*Id.* at 30]

---

[2]     Documents provided to the Court during the December 19, 2016, hearing indicate that, at the time Westberry was represented by appointed counsel Perlman, he also was receiving legal advice from an individual identified as Wes Robinson of National Legal Professional Associates ("NLPA") located in Cincinnati, Ohio.  [*See* Exhibits 1 and 2 introduced during the December 19, 2016, hearing.]  It does not appear that Mr. Robinson is permitted to practice law in the Eastern District of Kentucky but exhibits introduced during the December 19th hearing indicate that someone from NLPA was corresponding with Westberry, Perlman, and persons associated with the defendant at the time he was considering whether to enter a guilty plea or proceed to trial.

One week later, Westberry's attorney filed a motion to withdraw as counsel in the case. [Record No. 105]   Perlman's motion stated that she had difficulty communicating with Westberry due to his reliance on "external entities" and that, since the change-of-plea hearing, he had challenged her actions as counsel and challenged the validity of the guilty plea.   [*Id.*] During the December 19, 2016, hearing, Westberry introduced two letters from attorney Perlman in which she discusses the defendant's desire to withdraw his guilty plea and her subsequent motion to withdraw as counsel in the case.   Although undated, the first letter

---

By letter dated July 14, 2016, an unidentified person apparently advised Perlman, Westberry and others that NLPA had reviewed a number of materials, including correspondence, discovery, and the autopsy report for C.B., in an effort to determine whether a plausible defense could be presented regarding Count 2 of the Indictment.   [*See Id.*, Exhibit 1.]   In relevant part, the July 14th letter suggests that Perlman obtain a medical expert to "decipher whether the morphine in [C.B.'s] system was a contributing cause of death, which would be a necessity to present a defense under Burrage."   [*Id.*]   The Court assumes the authority referenced is *Burrage v. United States*, 134 S.Ct. 881, 892 (2014) ("at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury.").

The following day, another letter was apparently e-mailed to Perlman from the NLPA suggesting a different course of action.   This letter states:

> We are writing to followup on the letter we sent you and your client Navarius Westberry on July 14, 2016.   In our letter, NLPA suggested the possibility of obtaining a medical expert to further review the autopsy.
>
> However, upon further review and discussion, NLPA believes filing of any additional motions at this time could be counterproductive.   We certainly do not want to risk losing the prosecutor's agreement to remove the § 851 enhancement. As we both know, this was excellent development and has helped us be able to raise additional issues to reduce Mr. Westberry's sentence.

[*Id.*, Exhibit 2]   These documents indicate -- and the Plea Agreement confirms -- that Westberry's decision to enter a plea of guilty and to not challenge C.B.'s cause of death under *Burrage* was based on the government's proposal that it would not file a notice under 21 U.S.C. § 851.   Such a notice would have increased the statutory penalty for Count 2 to mandatory life imprisonment.

appears to have been prepared after Westberry entered his guilty plea (August 15, 2016), but before the motion to withdraw was filed (August 22, 2016).  In relevant part, the letter states:

> Based on your telephone call this morning, it is my understanding that you want to withdraw your guilty plea and hold some sort of hearing regarding the medical testimony as to what killed [C.B.]
>
> I am enclosing the autopsy reports.  There are two toxicology reports.  One is blood, one is urine.  The blood test shows that ONLY fentanyl was present in [C.B.'s] blood.  When fentanyl is processed through the body's elimination system and into urine, it breaks down into metabolites.  These metabolites which began as fentanyl ingested, break down into the elements of fentanyl – opiates – as they go through the human body's systems.
>
> There is nothing else in the blood to break down into opiates in the urine.  There were no other opiates in the blood.  Only fentanyl.  Fentanyl alone transformed into its chemical elements:  opiate metabolites.
>
> This is why I did not hire a medical expert.
>
> I questioned the prosecutor about [C.B.'s] mother's statements at the press conference.  The quote in the newspaper is: "His mother, [J.R.], said her son had taken painkillers to deal with a degenerative back disease, but she didn't know he was using heroin."  The prosecutor said that [C.B.] "got addicted to opiates, supposedly due to his back, but switched to heroin, likely because it was cheaper and more readily available."  There were no painkillers in [C.B.'s] autopsy results.
>
> I do not see any legal grounds for a withdrawal of your guilty plea.  I do not see any legal grounds for your demand for an "evidentiary hearing."  If you do continue to want one or both of these things, I believe our communications will have suffered a complete breakdown and I wouldn't think I could continue to represent you.  I hesitate to file a motion to withdraw because I do not think it would be a popular decision with the judge or the prosecutor and I know that another attorney would give you the same advice I have given.  However, I will wait to hear from you.

[*Id.*, Exhibit 4]

Although no documents were introduced regarding Perlman's later conversations with Westberry between the date of the above letter and August 22, 2016, further information is

outlined in counsel's letter of August 24, 2016.  Through this letter, Perlman apparently

advised Westberry of the following:

> I filed a motion to withdraw as your attorney which will be heard on Monday,
> August 29 at 9 a.m.
>
> The evidentiary hearing the NLPA is talking about is a hearing at sentencing.
>
> These sentencing hearings are held IF there are facts that have not been proven
> by either a plea agreement or a conviction.
>
> Your plea agreement proved the fact of the overdose by your admission.
>
> The only way to challenge that medical fact is for you to withdraw your guilty
> plea and ask for a trial.
>
> The U.S. is not going to be willing to allow you to plead guilty to these offenses
> without your agreement that the medical proof supports the plea.
>
> By the way, the medical proof does not support it.
>
> Your reference to a nurse saying the levels of fentanyl in Mr. Brewer's blood
> stream would be based on long-term use is of course logical.  He was an addict.
> And he died from the amount of the drug that he ingested.
>
> I do not believe you have grounds to withdraw your guilty plea.
>
> More than that, my ability to serve as your legal advisor is severely hampered
> by:
>> 1. Your reliance on NLPA.
>> 2. Your own gossip and/or discussions with your co-defendants, which
> is done contrary to my advice, and with other defendants whom you share your
> frustration about your situation and your attorney.
>> 3. Your statement that you are calling nurses to get medical opinions on
> your own.
>> 4. Your lack of confidence in the truth of what I have advised you.
>> 5. Your belief, based on statements you have made, that I am not looking
> out for your best interest.
>
> It is your best interest to work out a plea agreement so that you are not facing a
> mandatory life sentence.  That is what I've done.  It is not in your best interest
> to ignore the fact you want to ignore.  Just because I am telling  you something
> you don't like to hear, doesn't mean it is wrong.

The judge will give you the opportunity to speak on Monday.

[*Id.*, Exhibit 3]

The Court held a hearing on counsel's motion to withdraw on August 29. 2016. [Record No. 108] Westberry stated during this hearing that he was dissatisfied with his attorney's performance, primarily because she had failed to obtain a medical expert. [*Id.* at 4] The Court directly asked Westberry whether he intended to seek to withdraw the guilty plea that he had previously entered, and he responded in the negative.

> THE COURT:        All right.  Now, sir, you do understand you've already entered a guilty plea in the case.
>
> DEFENDANT WESTBERRY:      Yes, I understand that.
>
> THE COURT:        And I've concluded that it's knowing and a voluntary plea.
>
> Do you anticipate that you're going to be seeking to withdraw your guilty plea in this case?
>
> DEFENDANT WESTBERRY:      I never wanted to withdraw my guilty plea.  I just asked to have an evidentiary hearing.

[Record No. 108; Transcript at p. 4-5]  While Westberry confirmed that he did not wish to withdraw his plea, he again reiterated a desire for an evidentiary hearing relating to the death of the victim.  [*Id.* at 5]  Ultimately, the Court granted counsel's motion and appointed a new attorney (William Swinford) for Westberry.  [*Id.* at 9]

Through his second appointed counsel, Westberry submitted a number of filings relating to the upcoming sentencing hearing.  First, on November 7, 2016, Westberry filed objections to the Pre-Sentence Investigation Report ("PSR") in which he acknowledges that "his crimes are serious and require punishment . . . ."  [Record No. 138, p. 1]  Additionally, he again admits that he distributed heroin to Co-Defendant, Benjamin Robinson and Co-

Defendant, Dion Taylor, at various times.  [*Id*. at 2]  In fact, Westberry did not deny and continued to admit responsibility for his offenses through this filing.  [*Id*. at 3]  Westberry's present counsel also filed a Sentencing Memorandum in which the defendant purports to again acknowledge his guilt in the instant offense.  [Record No. 139, p. 1][3]

---

[3]      Since his appointment, attorney Swinford has filed several pleadings attempting to continue the sentencing hearing originally set for November 28, 2016.  On November 15, 2016, counsel ask for more time due to the extensive amount of discovery produced in the case by the United States and turned-over by Westberry's former counsel.  [Record No. 145]  In the same motion, he indicated "technology problems" while attempting to open the discovery produced.  Counsel also acknowledged that he was seeking an expert witness to testify at the sentencing hearing.

An exhibit introduced during the December 19, 2016, hearing indicates that, on November 16, 2016, Steven Fleming of Kentucky Toxicology Consulting, LLC sent an e-mail to Mr. Swinford addressing the toxicology reports relating to the death of C.B. and the overdose suffered by another victim, A.S.  [*See* December 19, 2016 hearing, Exhibit 5.]  More specifically, this exhibit indicates that, due to screening levels, C.B. could have used other drugs that were not detected.  He further indicates that the presence of morphine in C.B.'s urine suggests drug abuse other than fentanyl, but acknowledges that the "presence of drug in the urine is hard to use for the purposes of death."  Fleming also indicates that fentanyl levels in C.B.'s blood may be attributed to "postmortem redistribution."  Finally, with respect to C.B., Fleming questions whether it would be possible to perform more tests on the C.B. blood sample.  Regarding A.S., Fleming states that, in his opinion, the medical records do not identify a cause of her overdose.

Over his counsel's objections, Westberry also insisted during the December 19, 2016, that an additional letter be submitted as an exhibit in support of his motion to withdraw his guilty plea.  Counsel's concerns were well-placed because the document further supports the conclusion that Westberry's decisions have been deliberate, intentional and knowing, and not the result of distress, fear, misunderstanding, or influenced by the use of controlled substances.

The exhibit is a letter from counsel dated December 2, 2016, to another potential expert witness, Evan Scwarz, an assistant professor of emergency medicine at the Washington University School of Medicine.  [December 19, 2016, hearing, Exhibit 6]  After discussing payment for his services, counsel confirms that Schwartz is planning to attend the defendant's sentencing hearing in Lexington, Kentucky on January 9, 2017.  [By the time of this letter, the sentencing hearing had been continued from November 28, 2016, to January 9, 2017]  The letter then addresses issues relating to C.B.'s death and A.S.'s overdose.  In discussing the facts of the case, counsel states,

[a]s you can probably guess, it is very difficult to get a Plea Agreement withdrawn.  In any event, Mr. Westberry instructed me *not* to attempt to get a Plea Agreement withdrawn.  I have not done so.  Going into the Sentencing Hearing, Mr. Westberry

Westberry did not introduce evidence of correspondence or communications involving Fleming following the November 16, 2016, e-mail, or evidence of correspondence or communications involving Schwarz following the December 2, 2016, letter from counsel. However, there were other efforts to continue the November 28, 2017, sentencing hearing. On November 17, 2016, counsel filed a second motion to continue which requested additional time so that Westberry could retain Schwarz as an expert to be paid with funds under the CJA or, alternatively, so that members of Westberry's family could pay Schwarz for his services and expected testimony. [Record No. 150] The Court granted this motion and continued the sentencing hearing until January 9, 2017. [Record No. 151] However, because the defendant

---

stands adjudged guilty of selling or distributing fentanyl though his drug-trafficking organization (DTO) which resulted in the overdose death of [C.B.]. I do not believe the Court will allow you to express an opinion that differs from that admitted fact. However, I can make an argument under U.S.S.G. § 6B1.1 [Plea Agreement Procedure] that the Court should consider it. It is a longshot. . . .

Mr. Westberry wants you to provide an opinion as to whether it can be determined from the toxicology and autopsy reports that there were other drugs in his system that may have contributed to [C.B.'s] death.

[A.S.] overdosed in January of 2015 from fentanyl that she took after purchasing the fentanyl from [co-Defendant] Benjamin Robinson, part of Navarius Westberry's DTO. . . . I have been led to believe that by a medical professional with whom I spoke that due to the spotty medical records regarding [A.S.], we have a much better shot at convincing the Court by a *preponderance of evidence* that the drug she obtained from Benjamin Robinson was not the sole cause of her overdose. . . .

The [C.B.] overdose death caused by Navarius Westberry is an admitted fact – whether Mr. Westberry likes to acknowledge that or not. The overdose of [A.S.] is something that the United States is seeking to enhance Mr. Westberry's sentence with under the legal concept contained in the United States Sentencing Guidelines under *relevant conduct.*

[*Id*., Exhibit 6]

-11-

indicated that his family was able to pay Schwarz's fees, the request that those fees be paid under the CJA was denied.  [*Id.*]

After obtaining a continuance of the sentencing hearing originally scheduled for November 28th, counsel sought a third extension for claimed personal reasons (i.e., vacationing in Florida and participation in a golf tournament).  [Record No. 156]  That motion was denied.  Thereafter, on December 6, 2016, Westberry, through counsel, moved to withdraw his guilty plea.  [Record No. 159]

In a declaration accompanying the motion to withdraw his guilty plea, Westberry asserted that his former attorney's performance was inadequate because she failed to retain a medical expert, generally did not give his case proper attention, and told him that he had a "95% chance" of losing at trial and would ultimately receive a mandatory life sentence as a consequence of his actions.  [*Id.*, Ex. 1]  Additionally, Westberry alleged that he had insufficient time to consider whether to enter a guilty plea because his original attorney faxed him the subject Plea Agreement and informed him that he had only three hours to sign it or he would be going to trial.  [*Id.*]  Westberry contends that, because he was "overwhelmed with fear and confusion," he signed the document even though he knew the information contained within it was not true.  [*Id.*]  Finally, Westberry challenges the factual basis of the plea, stating that he was not a leader of a drug trafficking organization, did not supply Dion Taylor or Benjamin Robinson with heroin laced with fentanyl, was not responsible for the amounts of drugs stated in the PSR, and did not supply the substance that killed C.B.  [*Id.*][4]

---

[4]     During the hearing held on August 29, 2016, the Court advised Westberry of one possible consequence of unsuccessfully seeking to withdraw his guilty plea:  the loss of credit for acceptance of responsibility.  [Record No. 108, p. 8]  During the hearing held on December 19, 2016, the Court reaffirmed this possibility and also provided notice under Rule 32 of the Federal

As noted previously, a hearing on the defendant's motion to withdraw his guilty plea was held on December 19, 2016.  [Record No. 160]  During his testimony on December 19th, Westberry stated that he had not filed a motion seeking to withdraw his guilty plea at an earlier date because he had been gathering funds to hire a medical expert.  Additionally, he clarified the statement in the declaration accompanying his motion regarding the three hours that he allegedly was given to sign the Plea Agreement.  Westberry explained that his former attorney faxed him the Plea Agreement around June 24, 2016 (i.e., the date of the first change-of-plea hearing), and informed him he would be given three hours to sign the plea if he wished to avoid proceeding to trial.

Westberry testified that his attorney did not want him to enter the guilty plea during the June 24th hearing due to concerns that he may not have had sufficient time to consider the terms and conditions of the Plea Agreement.  Regarding the second (successful) change-of-plea hearing held on August 15, 2016, Westberry claimed to have been taking various medications obtained from other inmates immediately prior to the hearing.  As a result, he contends that he was unable to enter a knowing and voluntary plead guilty due to being under the influence of the drugs he was taking, but which he did not disclose to the Court.  Westberry also alleged that, when he entered the guilty plea, he was under the impression that he would be given an evidentiary hearing during which he could challenge the factual basis of some of the charges against him.  According to Westberry, and contrary to the sworn statements to the

---

Rules of Criminal Procedure that the range of imprisonment calculated under the relevant United States Sentencing Guidelines could be re-calculated with a higher guideline range if the defendant lost credit for acceptance or responsibility or received an enhancement for obstruction of justice as a result of perjured testimony offered during the hearing.

-13-

Court during the change-of-plea hearing on August 15, 2016, he would not have signed the Plea Agreement had he known that this was not the case.

## II.

"A defendant does not have an absolute right to withdraw a guilty plea." *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006). However, Federal Rule of Criminal Procedure 11(d)(2)(B) provides that a district court may permit a defendant to withdraw a guilty plea before a sentence has been imposed if he can establish a "fair and just reason" for the request.[5] The rule is intended to "allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) (internal quotation marks and citation omitted).

Westberry has the burden of proving that withdrawal of his guilty plea is justified. *Ellis*, 470 F.3d at 281. The determination of whether withdrawal is justified is made by reference to seven factors. They are:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Haygood*, 549 F.3d 1049 (6th Cir. 2008). "These factors represent a general, nonexclusive list and no one factor is controlling." *United States v. Goddard*, 638 F.3d 490,

---

[5]   Because this portion of Rule 11(d) was previously set forth in Rule 32(e) of the Federal Rules of Civil Procedure, some of the relevant authorities refer to Rule 32.

494 (6th Cir. 2001) (internal quotation marks and citation omitted).  Further, "[t]he relevance of each factor will vary according to the circumstances surrounding the original entrance of the plea as well as the motion to withdraw."  *Haygood*, 549 F.3d at 1052 (internal quotation marks and citation omitted).

Westberry has not demonstrated that he is entitled to relief under any of the factors identified above.

1.   The Amount Of Time That Has Passed Since The Guilty Plea Was Accepted Does Not Support Westberry's Request.

The amount of time that elapsed between Westberry's entry of a guilty plea and his motion to withdraw weighs against permitting withdrawal of the plea.  This is particularly true since Westberry declined to enter a plea the first time that he requested a change-of-plea hearing and was then given additional time to consider the terms of the Plea Agreement before ultimately changing his plea at a second hearing.  "When a defendant has a change of heart and asks the court to withdraw his plea, he must do without unwarranted delay."  *United States v. Culp*, 608 Fed. Appx. 390, 391 (6th Cir. 2015).  The Sixth Circuit has concluded that as few as 35 days is an unwarranted delay, and declined to permit the defendant to withdraw his plea after that period of time.  *United States v. Spencer*, 836 F.2d 236, 239 (6th Cir. 1987); *see also United States v. Goldberg*, 862 F.2d 101, 104 (6th Cir. 1988) (finding 55 days excessive); *United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996) (finding 67 days excessive).

Here, Westberry entered a plea on August 15, 2016, and filed this motion to withdraw the plea on December 6, 2016, after much deliberation and after 112 days had elapsed.  [Record Nos. 102, 159]  Based on Sixth Circuit precedent and the facts outlined above, Westberry's delay in filing his motion is excessive and does not support the requested relief.

2.    The Defendant's Stated Reasons For Failure To Move To Withdraw His Guilty Plea At An Earlier Date Do Not Support Westberry's Request.

Westberry has failed to provide a valid reason for his failure to move to withdraw his guilty plea at an earlier date. Westberry raises a number of claims regarding his plea, including dissatisfaction with his former attorney's performance leading up to execution of the Plea Agreement, assertions that the underlying facts on which the guilty plea was based are incorrect, and the circumstances surrounding his signing of the Plea Agreement. But *each* of these matters allegedly existed and were allegedly known by Westberry at the time he signed his Plea Agreement. Further, these concerns could have been addressed before Westberry agreed to enter a guilty plea in open court.

During the December 19, 2016, hearing, Westberry claimed that he delayed seeking to withdraw his guilty plea because he was attempting to obtain a medical expert to assist him in challenging the subject charges. However, during the hearing on his attorney's motion to withdraw approximately two weeks after Westberry entered his plea, Westberry expressed his interest in obtaining a medical expert to examine the drugs present in the victim[s] system. [Record No. 108, p. 5] The Court specifically asked Westberry whether he intended to seek to withdraw his plea. [Record No. 108, p. 5] If Westberry intended to change his mind and attempt to challenge the factual basis of his charges by obtaining a medical expert, he could have easily expressed that intention. But, he stated the opposite intention, responding that, "I never wanted to withdraw my guilty plea. I just asked to have an evidentiary hearing." [*Id.*] Moreover, following the August 29th hearing, Westberry was appointed new counsel with whom he could have sought to withdraw his plea at a much earlier time. Instead, Westberry waited over three months before seeking to withdraw his guilty plea. Under the circumstances

presented, and as Exhibit 6 reveals, as late as December 2, 2016, Westberry was instructing his attorney not to file a motion to withdraw the guilty plea entered in August 2016. The reasons given by the defendant do not justify the relief sought.

3.   The Defendant Has Not Maintain His Innocence In Relevant Pleadings Prior To December 19, 2016.

Westberry has not maintained his innocence over the course of the proceedings. However, in the present motion (and during his testimony on December 19, 2016), he asserts that he signed the Plea Agreement even though he "knew what [he] was signing wasn't true." [Record No. 159]  In short, Westberry *seems* to concede his guilt of distributing a controlled substance, but argues that he is innocent of distributing a controlled substance that contained fentanyl or distributing the controlled substance that ultimately caused C.B.'s death.  [*Id.*] However, at the re-arraignment hearing, the Assistant United States Attorney ("AUSA") summarized the Plea Agreement—including the underlying facts—and Westberry confirmed that the AUSA had correctly summarized the agreement, that the factual basis for the crime as outlined in the Plea Agreement was true and correct, and that he was guilty of the crime charged.  [Record No. 109, p. 31]  With respect to this issue, the Court notes that, "[a] defendant's statements at a plea hearing should be regarded as conclusive [as to truth and accuracy] in the absence of a believable, valid reason justifying a departure from the apparent truth of those statements."  *United States v. Owens*, 215 Fed. Appx. 498, 502 (6th Cir. 2007) (citation omitted); *see also United States v. Ryerson*, 502 Fed. Appx. 495, 500 (6th Cir. 2012) (noting that the defendant had "stated under oath, in open court, that the factual basis [provided in the plea agreement] was true and pleaded guilty" to the charge and ultimately denying his motion to withdraw his plea).

-17-

During the December 19th hearing, Westberry also claimed that, at the time he entered his guilty plea on August 15, 2016, he was under the influence of controlled substances he had obtained from other inmates. However, this assertion lacks credibility. During the change-of-plea hearing, the Court questioned the defendant regarding his use of controlled substances. Additionally, the Court questioned Westberry's counsel regarding whether she believed that Westberry was competent and capable of entering a guilty plea. The responses to these and other questions posed to the defendant regarding the matter, together with the Court's observations of the defendant, rule out the possibility that he did not understand or appreciate the consequences of his actions. Westberry's more recent claims to the contrary are totally lacking in credibility.

Next, the issue involving distributing of fentanyl and the cause of C.B.'s death was specifically addressed during the change-of-plea hearing. Although Westberry's attorney stated that Westberry was not aware that the substance contained fentanyl at the time that he distributed it, she confimed that he became aware of that fact prior to entering his guilty plea. Further, Westberry confirmed that he was aware that he did not have to know that the substance contained fentanyl to be guilty of the charge and that, although he did not personally know C.B., he understands that the substance he distributed caused C.B.'s death. [*Id*. at 28-30] These statements directly addressed Westberry's concerns and clearly establish that his guilty plea was knowing and voluntary, including the admission to distributing a substance containing fentanyl and causing C.B.'s death. Westberry explicitly admitted responsibility for actions that he now claims he did not commit. However, he cannot now contradict these admissions based on the record of these proceedings.

-18-

The Court again notes that, since pleading guilty on August 15, 2016, Westberry has repeatedly affirmed his guilt of the crimes charged.  This action, consistent with his guilty plea, undermines Westberry's current motion.  *See United States v. Martin*, 668 F.3d 787, 796 (6th Cir. 2012) (denying the defendant's motion to withdraw his plea in part because, following the plea hearing, the defendant expressly reaffirmed his guilt multiple times).  In his objections to the PSR, Westberry asserted that he "does not deny and continues to admit responsibility for his offense."  [Record No. 138, p. 3]  Likewise, Westberry "acknowledges his guilt in the instant offense" in the Sentencing Memorandum.  [Record No. 139, p. 1]

4.   The Circumstances Underlying Entry Of The Guilty Plea Do Not Justify Westberry's Request.

As discussed above, Westberry asserts that the his original attorney was deficient because she: (i) failed to give his case "proper attention"; (ii) declined to obtain a medical expert; (iii) told him that he had a "95% chance of losing" at trial; and (iv) opined that he would be given a mandatory life sentence.  Westberry was given an opportunity to raise these concerns on August 15, 2016.  However, he failed to do so when questioned by the Court.  Instead, Westberry confirmed that his attorney had discussed the nature of the charges and the contents of the Plea Agreement with him and that he was satisfied with her advice and representation.  [Record No. 109, p. 9-10]

Westberry failed to raise any deficiencies in his counsel's performance at the appropriate time and agreed to enter a guilty plea despite the deficiencies that he now claims existed.  Therefore, his attorney's performance is not a "fair and just" reason for permitting him to withdraw his plea.  Likewise, and as noted above, the Court rejects Westberry's attempt to brush aside his admissions given under oath on August 15, 2016, based on claims that he

was required to agree to whatever he was asked. The Court carefully considered his answers only after giving the defendant ample time to determine whether he should plead guilty to Counts 1 and 2.

Likewise, the Court gives no credence to Westberry's claim that he was not given sufficient time to consider the terms and conditions of the Plea Agreement before signing it. As explained during the December 19, 2016, hearing, the three-hour period that Westberry alleges he was given to sign the Plea Agreement occurred *prior* to the first re-arraignment hearing. Westberry did not enter a guilty plea on that date. Instead, he was given *an additional month* to consider the terms of the Plea Agreement before deciding whether to enter a guilty plea. This amount of time was more than sufficient for him to consider his options and to determine whether a guilty plea was the course of action that he wished to pursue.

Ultimately, in evaluating whether the circumstances provide reason to permit the defendant to withdraw a guilty plea, the Court considers whether the defendant was able to fully understand the plea agreement's terms and agree to it knowingly and voluntarily. *See Alexander*, 948 F.2d at 1004; *United States v. Martin*, 668 F.3d 787, 796 (6th Cir. 2012) (declining to permit a defendant to withdraw his guilty plea, despite his only having received twenty minutes to consider it, because "the district court thoroughly reviewed the terms of the plea agreement with [the defendant], who expressed no confusion and affirmed his understanding of the agreement" as well as its consequences). Here, the undersigned thoroughly discussed the terms and consequences of the Plea Agreement and confirmed that Westberry was certain that he wished to enter a guilty plea.[6] The Court's discussion cleared-

---

[6]     The Court explained to Westberry that, by entering a guilty plea, he was admitting the facts underlying the charges and that he would no longer have a trial in which to challenge

-20-

up any confusion that Westberry may claim due to the circumstances alleged.  This discussion establishes that Westberry was fully informed and knowledgeable of the consequences of his decision prior to entering a guilty plea.  Westberry fully understood the terms of the Plea Agreement and the consequences of his actions before the Court accepted his guilty plea.

5.      The Defendant's Background Does Not Support the Relief Sought.

Westberry's background does not support any claim that he was unable to understand the proceedings.  *See Ryerson*, 502 Fed. Appx. At 500 ("[T]here was no indication that [the defendant] could not or did not understand the potential prison sentence he faced."); *Martin*, 668 F.3d at 796 ("[T]here is no evidence of any mental or learning disability that would impair his understanding.").  Westberry graduated high school, completed some college (including criminal justice classes), and is able to read and write.  [Record No. 109, p. 4-5]  There is absolutely no indication that he lacked the ability to understand the nature of the charges or the consequences of entering a guilty plea.  Westberry's current claims of mental deficiencies and/or incompetence are without merit.

6.      Westberry's Prior Experience with the Criminal Justice System Does Not Support His Motion.

Westberry was indicted on a charge of possession of cocaine in 1998.  He later pleaded guilty to that charge.  [Pre-Sentence Investigation Report, p. 11, 13]  Westberry served a total of six years in prison for the offense.  [*Id.*]  Thus, Westberry has prior, relevant experience with the criminal justice system.  This experience suggests that he understood the nature of the process and was aware of the consequences of entering a guilty plea.  The fact that his prior

---

those facts.  Accordingly, Westberry's statements regarding his belief that he would be given an evidentiary hearing to challenge the charges against him do not provide a fair and just reason to permit him to withdraw his plea.

experience was with state officials, rather than federal law enforcement and/or prosecutors in another jurisdiction, is of no material consequence when considering the present motion.

       7.    <u>There is Potential Prejudice to the Government.</u>

The Government is only required to prove prejudice if the defendant is able to establish a fair and just reason to grant withdrawal.  *United States v. Spencer*, 836 F.2d 236, 240 (6th Cir. 1987).  Accordingly, the Government need not demonstrate prejudice.  However, allowing withdrawal at this stage of the proceedings may result in prejudice.  The Sixth Circuit has recognized that the cost associated with a second preparation for trial can constitute prejudice under the applicable rule.  *See United States v. Durham*, 178 F.3d 796, 799 (6th Cir. 1999).

Here, if the motion were granted, the United States would be forced to again prepare for trial, retain experts, and locate other witnesses and secure their attendance for trial.  The Court cannot conclude that no prejudice would be suffered by the government if Westberry's motion were granted and his guilty plea were set aside.  However, because Westberry has not met his burden of showing that a fair and just reason exists for sustaining the motion, the Court need not reach any final conclusion concerning the extent of prejudice that would be suffered by the United States if the relief sought were granted.

## III.

The defendant has wholly failed to establish any legitimate reason which would justify setting aside his prior guilty plea.  Accordingly, it is hereby

**ORDERED** that Defendant Westberry's motion to withdraw his guilty plea [Record No. 159] is **DENIED**.

This 20th day of December, 2016.



**Signed By:**

**_Danny C. Reeves_**  DCR

**United States District Judge**