UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | Criminal Action No. |
| | ) | 5:15-0114-DCR-MAS-1 |
| v. | ) | and |
| | ) | Civil Action No. |
| NAVARIUS SAVELL WESTBERRY, | ) | 5:19-0274-DCR-MAS |
| | ) | |
| Defendant/Movant. | ) | |

**REPORT & RECOMMENDATION**

This matter is before the undersigned on Petitioner Navarius Savell Westberry's ("Westberry") Motion to Vacate, Set Aside or Correct a Sentence pursuant to 28 U.S.C. § 2255. Westberry alleges his counsel was ineffective. [DE 232]. The United States responded in opposition [DE 235], and Westberry filed a reply [DE 236]. After reviewing the record in its entirety, the Court recommends Westberry's motion be denied for the reasons stated below.

**I.    RELEVANT FACTUAL BACKGROUND**

On March 25, 2016, Westberry appeared before the Court on an indictment charging him with conspiracy to distribute heroin and mixtures containing fentanyl, with the latter resulting in serious bodily injury to a victim and overdose death in another. [DE 54; DE 1 (Indictment)]. Because the crimes alleged caused serious bodily injury and an overdose death, the crimes carried enhanced penalties. *See* 21 U.S.C. § 841(1)(a); 21 U.S.C. § 846.

On June 24, 2016, Westberry attempted to enter into a plea agreement, but the hearing was postponed because Westberry was anxious and sought more time to understand the plea agreement. [DE 87]. Three weeks later, with additional time to consider the plea agreement, Westberry pleaded guilty to Counts 1 and 2 of the Indictment and knowingly entered into the plea agreement.

1

[DE 103 (Plea Agreement); DE 102 (Rearraignment)]. In return, the United States agreed to dismiss Count 3 at sentencing. [DE 103; DE 169 (Sentencing)]. The United States also agreed to refrain from filing a 21 U.S.C. § 851 enhancement on Count 2. [DE 103, at Page ID # 277 (Plea Agreement)].

Nearly four months after pleading guilty, Westberry filed a motion to withdraw his plea. After reviewing filings from the parties and conducting a hearing in which Westberry participated, the Court denied his request holding that Westberry had ample time to consider his plea. [DE 166].

Westberry was sentenced to forty (40) years imprisonment for Count 1 and life imprisonment for Count 2, to be served concurrently. [DE 171 (Judgment)]. Westberry appealed to the Sixth Circuit Court of Appeals. [DE 191]. The Sixth Circuit affirmed the District Court's decision. [DEs 213-14]. Westberry then timely filed the present Motion to Vacate, Set Aside, or Correct a Sentence on March 19, 2019. [DE 230].

## II.  ANALYSIS

In his motion, Westberry advances two general arguments as to why his sentence should be set aside. First, Westberry contends that his counsel was ineffective for failing to fully investigate the claims against him. Second, Westberry argues his plea was involuntary. The Court will address each of these arguments below.

### A.  CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL

To succeed on a § 2255 motion, petitioner "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). One such possible claim of constitutional error is a claim of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-87 (1984). To prevail on a claim of

ineffective assistance of counsel, petitioner must prove (1) that their counsel's performance was deficient, and (2) that petitioner suffered prejudice due to said deficiency. *Id*. at 687. Deficient performance is shown only through proving "counsel's representation fell below an objective standard of reasonableness." *Id*. at 687-88. A showing of prejudice requires a "reasonable probability that, but for counsel's errors, the judicial outcome would have been different." *Id*. at 694-95. Petitioner must adequately fulfill both components of the analysis, but courts need "not address both components of the deficient performance and prejudice inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Strickland*, 466 U.S. at 697.

Westberry's primary claim contends that his former counsel, Pamela Perlman ("Perlman"), failed to "investigate the cause of death and serious bodily injury allegations and accepted the opinion offered by the government as gospel." [DE 230, at Page ID # 1279]. Had Perlman investigated fully into whether fentanyl was the "but-for" cause of death of the alleged victims, Westberry believes the investigation would have affected his decision to enter into a plea agreement. [DE 230, at Page ID # 1280]. As explained below, Perlman's decision to not hire additional medical examination did not prejudice Westberry, nor did it alter his decision to enter the plea agreement.

The decision of counsel to choose one strategy over another is "virtually unchallengeable". *Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 849 (6th Cir. 2017) (quoting *Buell v. Mitchell*, 274 F.3d 337, 359 (6th Cir. 2001)). To meet the *Strickland* standard, a defendant must show that counsel's strategy prejudiced him or her. *See Leonard*, 846 F.3d at 849; *see also Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (stating that proving prejudice under *Strickland* involves an "exacting standard" of showing that, but for counsel's failure, there is a reasonable

3

probability that the outcome would have been different). Specifically, a claim of counsel's failure to investigate "must allege with specificity what the investigation would have revealed and how it would have altered the outcome." *United States v. Hassan*, Nos. 12-cr-20523, 14-cv-11592, 2014 WL 5361942, at *5 (E.D. Mich. Oct. 21, 2014) (quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)). Mere speculation that an alternative strategy would have altered the judicial outcome is not sufficient. *Hodge v. Haeberlin*, 579 F.3d 627, 640 (6th Cir. 2009) ("Hodge's speculation that his testimony would have left a favorable impression with the jury does not demonstrate the required prejudice under *Strickland*."). Likewise, "[c]ounsel does not fall below [the *Strickland*] standard by failing to prevail when arguing a debatable point to the court." *Id.* at 644.

Westberry asserts that Perlman's decision to not hire a medical expert to refute the victim's cause of death prejudiced him. The record refutes this claim. The victim's blood tested positive for fentanyl in an amount above therapeutic levels. [DE 235-2 (Exhibit A: Laboratory Report)]. The autopsy report stated that the "death of the [victim was] due to acute fentanyl toxicity." [DE 235-3 (Exhibit B: Autopsy Report). Thus, Perlman made the strategic decision to not hire a medical expert. [DE 235-1, at Page ID # 1326 (Perlman Affidavit); *see also* DE 230-3, at Page ID # 1296-97 (letter from Perlman to Westberry explaining the test results)].

Westberry bases his analysis upon the opinions of experts hired after Perlman withdrew as counsel. [DE 230, at Page ID # 1282]. Yet, the results acquired by these new experts actually support the prior expert's findings and completely undercut Westberry's argument. Expert Steven Fleming ("Fleming"), hired by Westberry's second attorney, explained that there was morphine found in the victim's urine test, which could "suggest drug abuse outside of fentanyl." [DE 230-4, at Page IF # 1300]. Nonetheless, Fleming concluded any non-fentanyl abuse could have

4

occurred days prior and "[t]he presence of a drug in the urine is hard to use for the purposes of death." [*Id.*]. Similarly, expert Evan Schwartz found that, while it was "possible that an unidentified compound could have contributed to [the vicitm's] death", the death was "consistent with acute fentanyl intoxication" and that morphine exposure "was likely not acute and not the cause of death." [DE 230-5, at Page ID # 1304-05].

Thus, not only is Westberry's argument against Perlman legally unfounded, but later retained experts proved the claims as factually unfounded. At best, his claims that a jury may have found some daylight amongst these experts is mere speculation and falls short of showing any actual prejudice. *Hodge*, 579 F.3d at 640, 644; *see also United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1999) (holding "[c]ounsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise probably would have won"). In the end, all three experts agreed that fentanyl was cause of the victim's death, and Perlman's retention of supporting experts would have been a redundant use of resources.

Accordingly, and the Court would recommend denial of the motion as Westberry's arguments fail on the merits.

**B.    CLAIMS OF AN INVOLUNTARY PLEA**

  **1. Counsel Did Not Induce Westberry into Entering his Plea Agreement**

First, Westberry claims Perlman pressured him to plead guilty. [*See* DEs 230, 236 (consistently stating counsel "induced" Westberry to accept a plea agreement)]. Perlman rebuts this not only with her words, but her actions. In a letter sent from Perlman to Westberry, she stated that she "never instructed [Westberry] to sign the plea agreement" and that she "cannot tell [Westberry] what decisions to make nor can [she] make those decisions for [him]". [DE 235-1, at Page ID # 1328-29]. Perlman gave explicit dates of "extensive phone conversations with [Westberry] regarding the plea agreement". [*Id.*]. The docket is littered with multiple letters sent

5

by Perlman that show she was diligent in explaining the evidence available, the mechanics of the plea agreement, and the justifications for the advice she rendered to Westberry. [*See* DEs 230-3, 235-1].

Most telling, however, was that Perlman requested extra time for Westberry to review his plea agreement at his first rearriagnment on June 24, 2016. [DE 207]. Specifically, when Perlman was asked by the Court if she had any concerns regarding her communications with Westberry, she responded:

> "[…] I am concerned to bring this up, but he has told me this morning that because of his anxiety he is not feeling like he is comprehending what we are talking about. And I hesitate to – to upset the Court's schedule or – or the functioning of the Court, but on the other hand, I definitely believe it's my duty to bring that to the Court's attention."

[*Id.* at Page ID # 1158-59]. Perlman elaborated that Westberry had been given "too short of a period of time" to review the plea agreement thoroughly and requested more time to do so. [*Id.* at Page ID # 1159-60]. Westberry reiterated later to the Court that Perlman "didn't feel comfortable with me signing the plea agreement at [the first rearraignment] because I didn't understand it." [DE 188, at Page ID # 846]. As the United States noted, "[s]eeking an extension to give a defendant clarity regarding a plea offer hardly reflects the mindset of an attorney whose main goal is to coerce her client to enter into a plea." [DE 235, at Page ID # 1321].

Thus, the Court rejects any argument that Westberry was induced to enter his plea agreement. *Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003) ("[t]he decision to plead guilty—first, last, and always—rests with the defendant, not his lawyer."). The Court would recommend to the District Court to deny Westberry's motion on this ground.

6

## 2. <u>Westberry Entered his Plea Agreement Voluntarily and Intelligently</u>

Westberry also asserts his guilty plea was not voluntary, citing to his effort to withdraw his guilty plea. [DE 230, at Page ID # 1281, 1285-86]. Once again, the record betrays Westberry's claims.

As previously discussed, the decision to plead guilty rests with the defendant. *Smith*, at 348 F.3d at 552. Westberry elaborates on *Smith*, noting that counsel also has a "clear obligation to fully inform her client of the available options." [DE 236, at Page ID # 1348 (citing *Smith*, at 348 F.3d at 552)]. Counsel has a "paramount" duty to "ensure that the client's decision is as informed as possible." *Miller v. Straub*, 299 F.3d 570, 580 (6th Cir. 2002). Finally, "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal" because of the "strong presumption of verity" of the statements made under oath during the plea colloquy." *Id.* at 74.

The record shows that Westberry, by his own testimony, understood the judicial process of entering a plea agreement. Westberry claims that he was never told that by signing a plea agreement, he would not be able to contest the case of death allegations against him. [DE 230, at Page ID # 1290]. Yet, the Court advised Westberry of his right to proceed to trial and the fact that "under most circumstances, [he] would not be able to seek to withdraw from his plea agreement," to which Westberry affirmed he understood. [DE 109, at Page ID # 330-32]. In the same colloquy, Westberry admitted to essential elements of the crime and acknowledged his guilt. [*Id.* at Page ID # 336-339]. As mentioned, the admissions by Westberry carry a strong presumption of verity. *Blackledge*, 431 U.S. at 74; *see also Ramos v. Rogers*, 170 F.3d 560, 563 (6th Cir. 1990) (holding

7

that "the defendant is bound by his statements" during a proper Rule 11 colloquy). This is bolstered by the benefits Westberry accrued by accepting a plea agreement. For the terms of the plea, the government dismissed a count in the originally indictment against Westberry, which concerned the non-fatal overdoes of another victim. [DE 235-1, at Page ID 1326; DE 103, at Page ID # 277 (Plea Agreement)]. The United States also agreed to not file a 21 U.S.C. § 851 notice, which would have increased the penalty of Count 2 to mandatory life imprisonment. [DE 235-1, at Page ID 1326; DE 103, at Page ID # 281; DE 175, at Page ID # 751 (Presentence Report); DE 166, at Page ID # 683 n.2 (The Court acknowledging "Westberry's decision to enter a plea of guilty and to not challenge C.B.'s cause of death under *Burrage* was based on the government's proposal that it would not file a notice under 21 U.S.C. § 851.").

Although Westberry did attempt to withdraw his plea agreement, not once did he claim he wished to proceed to trial. [DE 159, at Page ID # 654]. Instead, the District Judge found that Westberry "continued to admit his responsibility for his offenses through [the] filing." [DE 166, at Page ID # 687]. The District Judge ultimately determined the withdrawal of Westberry's plea was unwarranted. [DE 166]; *see also United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006) (stating the burden is on the defendant of proving a withdrawal of a guilty plea is justified). Specifically, the District Judge found that Westberry's motion to withdraw, filed 112 days after entering said agreement, was an excessive delay. [DE 166, at Page ID # 692]. Noting that "[w]hen a defendant has a change of heart and asks the court to withdraw his plea, he must do without unwarranted delay," it was evident that it was not a lack of understanding, but simply regret that fueled Westberry's request. *United States v. Culp*, 608 Fed. Appx. 390, 391 (6th Cir. 2015). The decision to deny Westberry's efforts to withdraw his guilty plea was ultimately affirmed by the Sixth Circuit. *See United States v. Robinson*, 732 F. App'x 405 (6th Cir. 2018).

8

With this habeas petition, it seems Westberry is trying to have another bite at that apple. The Court, however, finds his argument unconvincing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986) ("[c]ourts naturally look with a jaundiced eye upon any defendant who seeks to withdraw a guilty plea after sentencing on the ground that he expected a lighter sentence.").

### III.   CONCLUSION

For the reasons stated herein, the Court recommends the District Court deny Westberry's Motion to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. § 2255.

### CERTIFICATE OF APPEALABILITY

A certificate of appealability ("COA") shall issue only if a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought pursuant to 28 U.S.C. § 2255). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of the Defendant's § 2255 motion or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly,

it is **RECOMMENDED** that a certificate of appealability be **DENIED** upon the District Court's entry of its final order in this matter.

## RECOMMENDATION

For the reasons stated in this decision, the Court **RECOMMENDS** that:

1) the District Court **DENY**, with prejudice, Defendant's § 2255 motion [*See* DE 232]; and

2) the District Court **DENY** a certificate of appealability as to all issues, should movant request a COA.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute. As defined by § 636(b) (1), Fed. R. Civ. P. 72(b), Fed. R. Crim. P. 59(b), and local rule, within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.

Entered this the 30th day of October, 2019.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge