UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal Action No. 5: 15-114-DCR |
| Respondent/Plaintiff, | ) | and |
| | ) | Civil Action No. 5: 19-274-DCR |
| V. | ) | |
| | ) | |
| NAVARIUS SAVELL WESTBERRY, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Movant/Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Movant/Defendant Navarius Savell Westberry has filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. [Record No. 230] He asserts that his trial counsel was ineffective for failing to fully investigate the claims against him. He further claims that his attorney provided inaccurate advice to induce a guilty plea that he otherwise would not have entered. The matter was referred to United States Magistrate Judge Matthew Stinnett for the issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Stinnett filed his report, recommending that the Court deny the motion because Westberry was not prejudiced by counsel's decisions and advice. [Record No. 237] The magistrate judge further concluded that Westberry's plea was knowing, intelligent, and voluntary. [*Id.*] Westberry submitted multiple objections to Magistrate Judge Stinnett's Report and Recommendation. [Record No. 238]

The Court conducts a *de novo* review of the portions of the Magistrate Judge's recommendation to which timely objections are made. 28 U.S.C. § 636(b)(1)(C); *Thomas v.*

*Arn*, 474 U.S. 140, 150 (1985). After conducting a *de novo* review of Westberry's entire §2255 motion, the undersigned concludes that Westberry's motion should be denied.

**I.**

Westberry and his co-defendants were involved in a scheme to distribute fentanyl which resulted in serious bodily injury and death. He was charged with: (1) conspiring to knowingly and intentionally distribute a mixture or substance containing a detectable amount of heroin and a mixture or substance containing a detectable amount of fentanyl in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846 (the amount of heroin attributable to Westberry and his alleged co-conspirators was more than 100 grams); (2) conspiring to knowingly and intentionally distribute a mixture or substance containing a detectable amount of fentanyl which resulted in the death of one individual ("C.B.") in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846; and (3) conspiring to knowingly and intentionally distribute a mixture or substance containing a detectable amount of fentanyl, the use of which resulted in serious bodily injury to another individual ("A.S."), in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. [Record No. 1]

Westberry originally agreed to plead guilty in June 2016, but then declined to do so on June 24, 2016, because he was "anxious" and claimed he was not ready to proceed. His former counsel, Pamela Perlman, was concerned about whether Westberry understood the terms of his plea agreement and requested additional time for him to review the agreement. The Court granted the defendant additional time to consider the terms of his plea agreement and to give counsel additional time for trial preparation. [Record No. 87]

Westberry filed a second motion for re-arraignment and pleaded guilty to Counts 1 and 2 of the Indictment on August 15, 2016. [Record No. 103] The parties agreed that the

government would move to dismiss Count 3 at the sentencing hearing. Westberry agreed that he distributed controlled substances himself, provided controlled substances to others for distribution, and that he conspired to distribute heroin and a detectable amount of fentanyl. [Record No. 103] He also acknowledged that the substance distributed caused the death of C.B., even though he maintained that he was unaware of the fact that the substance distributed contained fentanyl at the time of distribution. [*Id*.] Westberry affirmed that he understood the consequences of pleading guilty, that he discussed his plea agreement with his attorney and was satisfied with her advice, and that he understood the terms of his plea agreement. [Record No. 109, pp. 22-24]

Perlman later asked to withdraw from the case because of disagreements with Westberry. [Record No. 105] She explained that she struggled to communicate with Westberry because he relied on "external entities" and continued to challenge her actions. During the hearing on counsel's motion to withdraw, Westberry explained that he was not satisfied with Perlman's performance because she would not retain a medical expert. [Record No. 108] However, he also contended that he did not intend to withdraw his guilty plea. [*Id*. at 4-5] The Court granted the motion to withdraw and appointed Attorney William Swinford to represent Westberry.

Thereafter, Westberry filed a motion to withdraw his guilty plea because of Perlman's performance; namely, that she failed to retain a medical expert, did not give his case proper attention, and for advising that he a high probability of losing at trial. Westberry also asserted that his plea was not knowing and voluntary because he was under the influence of Xanax during his second re-arraignment hearing. The Court denied his motion to withdraw his guilty

plea. [Record No. 166] Westberry was sentenced to forty years' imprisonment on Count 1 and life imprisonment on Count 2 for a total term of life in prison. [Record No. 171]

Westberry appealed the Court's decision to deny his motion to withdraw his guilty plea, claiming that counsel was ineffective during plea negotiations. [Record No. 172] However, the Sixth Circuit affirmed this Court's decision to deny the motion to withdraw and declined to address his ineffective assistance claim. [Record No. 213]

In his current motion, Westberry asserts that attorney Perlman failed to investigate the cause of death and serious bodily injury charges. [Record No. 230] He alleges that Perlman advised him that the government had evidence about the overdose death of "C.B." and serious bodily injury of "A.S." Westberry contends he asked Perlman to obtain a medical expert to review the cause of death and asked her to provide him with medical records that the government relied upon in determining the cause of death and serious bodily injury. He asserts that Perlman told him the only way to avoid a life sentence was to plead guilty and that she failed to advise him that the government must prove the elements of serious bodily injury and death. Westberry also argues that she failed to advise him that if he entered a plea, he would no longer have the opportunity to contest the cause of death and serious bodily injury. He claims that he received ineffective assistance of counsel because the advice of counsel was objectively unreasonable.

As noted previously, Magistrate Judge Stinnett recommends that Westberry's § 2255 petition be denied. [Record No. 237] He concluded that Perlman's decision not to hire an additional medical expert did not prejudice Westberry or alter his decision to enter into a plea agreement. He explained that it was a strategic choice not to hire a medical expert because the government's autopsy and lab report demonstrated the victim's death was caused by fentanyl

toxicity. Additionally, the experts hired after Perlman withdrew *agreed* that the victim's death was consistent with acute fentanyl intoxication. Magistrate Judge Stinnett also concluded that Attorney Perlman did not induce Westberry to enter a plea agreement; instead, he did so voluntarily and intelligently.

Westberry objects to the entirety Magistrate Judge Stinnett's Report and Recommendation. [Record No. 238] First, he objects to the magistrate judge's findings regarding the relevant factual background. Second, he objects to the characterization of his claims. Specifically, he disputes the characterization of the choice not to hire an expert as a strategic choice. He then objects to the analysis that the plea was voluntary. Westberry contends that he did not assert that his plea was involuntary or that counsel induced his plea. Additionally, he objects to the finding that his petition should be denied and that a Certificate of Appealability should not be issued. Finally, he restates all the arguments made in his original motion.

## II.

A movant must allege "an error of constitutional magnitude, a sentence imposed outside the statutory limits, or an error of fact or law that was so fundamental as to render the entire proceeding invalid" to prevail on a claim under 28 U.S.C. § 2255. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003). "Relief is warranted only where a petitioner has shown 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Miller v. United States,* 561 F. App'x 485, 490 (6th Cir. 2014) (citing *Davis v. United States*, 417 U.S. 333, 346 (1974)).

A defendant's right to effective assistance of counsel is violated when defense counsel's performance falls below an objective standard of reasonableness and the defendant

is prejudiced by counsel's performance. *Henness v. Bagley,* 766 F.3d 550, 554 (6th Cir. 2014) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "[T]o satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also United States v. Wynn,* 663 F.3d 847, 851 (6th Cir. 2011). A court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Westberry asserts that his counsel provided him unreasonable advice during plea negotiations because she failed to investigate the cause of death, did not hire a medical expert, did not provide him the medical records of the victim, and did not explain to him the government's burden of proof at trial or provide him information on the Supreme Court case, *Burrage v. United States*, 571 U.S. 204 (2012). Again, he argues that Perlman failed to investigate the cause of death and serious bodily injury charges. Westberry contends that Perlman advised him that the government had evidence about the overdose death of "C.B." and serious bodily injury of "A.S."[1] And he claims that she just adopted the government's view of the evidence without investigation. Westberry states he asked Perlman to obtain a medical expert to review the cause of death and her choosing not to do so prejudiced him. However, the autopsy report stated that the victim's death was due to acute fentanyl toxicity and the laboratory report showed fentanyl in the victim's blood above the therapeutic level. [Record Nos. 235-2, 235-3]

---

[1] Westberry did not plead guilty to any conduct relating to A.S.'s overdose. [Record No. 103]

Attorney Perlman stated in her affidavit that, "[i]n the exercise of her legal discretion and experience, [she] considered whether the hiring of a medical expert was necessary and determined . . . it was not." [Record No. 235-1] The Court agrees with Magistrate Judge Stinnett that it was a strategic decision by counsel not to hire an additional expert to review the medical evidence. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (quoting *Strickland*, 466 U.S. at 690)). Perlman based her decision on the autopsy report, laboratory report, and discovery that was supplemented by AUSA Todd Bradbury's representation that the expected witness testimony would be that Westberry was the only source of drugs supplied to the victim. [*Id.*]

Westberry objects to Magistrate Judge Stinnett's characterization of the failure to investigate as a "strategic choice." [Record No. 238, p. 2] However, it was a strategic choice not to hire an expert after reviewing the reports and discovery. Perlman reviewed the autopsy report, the laboratory report, and other discovery before determining that hiring a medical expert was not necessary. Further, the experts hired by the defendant after Perlman withdrew as counsel support the findings in the original autopsy report. There is no evidence that she failed to investigate the cause of death and her conclusion to not hire an expert was a strategic decision. Further, Westberry was not prejudiced by Attorney Perlman's decision not to hire a medical expert because even his own experts hired after Perlman withdrew concluded that the victim's death was "consistent with acute fentanyl toxicity. No other cause of death was suspected from his autopsy. Urine forensic testing was positive for morphine. However[,] no morphine was found in his blood. As such this is likely a marker of recent exposure to morphine and did not contribute to his death." [Record No. 230-5, p. 4]

Westberry told the Court when Perlman withdrew as counsel that he did not wish to withdraw his guilty plea. [Record No. 108, pp. 4-5] Additionally, he instructed attorney Swinford not to attempt to withdraw his plea agreement, even after new experts were hired. [Record No. 230-5, p. 2] Thus, he cannot show that he would not have pleaded guilty and insisted on going to trial. *See Hill*, 474 U.S. at 59 (explaining that for a defendant to demonstrate prejudice he must show that but for counsel's errors, he would not have pleaded guilty but insisted on going to trial).

Further, Westberry asked Perlman to provide him with medical records that the government relied upon in determining the cause of death and serious bodily injury. He claims that she was ineffective because she did not provide him the medical records. However, in Perlman's affidavit, she asserts that she gave Westberry the medical records both *before* his decision to plead guilty and *after* his request following the entry of his plea. [Record No. 235-1] Additionally, Perlman wrote to Westberry between his re-arraignment and her motion to withdraw detailing why she chose not to hire a medical expert and noting that she was disclosing the autopsy reports along with the letter.

Westberry also asserts that Perlman told him the only way to avoid a life sentence was to plead guilty and that she failed to advise him that the government must prove the elements of serious bodily injury and death and that if he pled guilty he could not contest the cause of death stipulations. But at his plea colloquy, Westberry admitted to the essential elements of the offenses, agreed that he discussed them with his attorney, agreed with the factual basis included in his plea agreement, agreed that he was satisfied with his attorney's advice and representation, and acknowledged his guilt. [Record No. 109, pp. 24-31] Further, the Court explained the rights he was giving up when he agreed to plead guilty, including the right to go

to trial where he would be able to challenge the facts underlying his charges. [Record No. 109, p. 24; *see also Thompson v. United States*, 728 F. App'x 527, 535 (6th Cir. 2018) ("[T]he Sixth Circuit has consistently upheld the validity of the plea-colloquy advisement of rights to preclude later claims of misunderstanding alleged to result from misleading advice.").] Further, Perlman noted she met with Westberry and conducted telephone conversations on at least eight occasions to discuss his plea agreement and provided him with copies of all discovery. [Record No. 235-1] Additionally, at his first re-arraignment hearing, Perlman explained to the Court that she was concerned about his ability to comprehend the proceedings and that she felt that he needed more time to review and understand the plea agreement. [Record No. 87]

Westberry asserts that Perlman failed to discuss the Supreme Court's decision in *Burrage v. United States*, 571 U.S. 204 (2012), with him and that she should have raised the defense. In *Burrage*, the Supreme Court held that a defendant could only be liable for an enhanced penalty if the substance distributed was the but-for cause of the user's death or injury. *Id*. However, the evidence presented in this case demonstrated that fentanyl was the but-for cause of death of the victim and Westberry agreed at his plea colloquy that he and his co-conspirators distributed the substance that was the but-for cause of the victim's death. *See Bradshaw-Love v. Warren*, No. 16-2756, 2017 U.S. App. LEXIS 26220 (6th Cir. June 23, 2017) ("Attorneys do not perform deficiently by failing to raise meritless arguments."); *Sutton v. Bell*, 645 F.3d 752, 755 (6th Cir. 2011) ("Given the prejudice requirement, counsel cannot be ineffective for a failure to raise an issue that lacks merit.")). Perlman explained to Westberry that the blood test showed that only fentanyl was present in the decedent's blood. Additionally, the experts later hired by the defendant do not undercut the finding that fentanyl

toxicity caused the victim's death. Accordingly, raising a defense under *Burrage* would have been futile.

Additionally, Westberry was aware of the holding in *Burrage* before pleading guilty. A letter from the National Legal Professional Associates ("NLPA") to Perlman and Westberry, dated July 14, 2016 (a month before Westberry pled guilty), suggested to her that she obtain a medical expert to determine whether it would be necessary to present a defense under *Burrage*. [Record No. 166, fn. 2] However, in an e-mail sent the next day, the NLPA noted that requesting a further expert or raising a defense under *Burrage* could be counter-productive because it could jeopardize the agreement of the government not to file a notice for an 851 enhancement. [*Id*.] Westberry was at least made aware of the decision in *Burrage* from the communications with Perlman and the NLPA.

In summary, Westberry claims that counsel's advice was objectively unreasonable because she did not hire a medical expert, failed to investigate, failed to advise him that if he entered a plea he would no longer have the opportunity to contest the cause of death and serious bodily injury, and failed to explain the essential elements of his offense. However, Westberry has failed to show how his counsel's choice not to hire a medical expert prejudiced him or that he did not understand the essential elements of the offense. And any alleged misunderstanding about a potential hearing to contest the evidence against him was cured by the plea colloquy. *See Ewing v. United States*, 651 F. App'x 405, 410 (6th Cir. 2016) (citing *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999)). Further, Westberry never indicated that he wished to proceed to trial. Instead, he explicitly told the Court he did not wish to withdraw his guilty and instructed his replacement counsel not to attempt to withdraw his guilty plea.

Accordingly, his counsel's advice was not objectively unreasonable and he has not demonstrated prejudice.

Finally, Westberry objects to the magistrate judge's analysis that the plea was voluntary because he is not arguing that his plea was entered into involuntarily or that counsel induced his plea. He claims that he received unreasonable and incomplete advice from counsel and that is what induced him to accept the plea agreement. While reviewing the voluntariness of the plea was unnecessary because Westberry asserts that is not an argument he raised, this Court has reviewed all of his claims *de novo* and determined that his counsel did not provide him unreasonable advice and was not ineffective.

## III.

A Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); 28 U.S.C. § 2253(c)(2). When the denial of a motion filed under § 2255 is based on the merits, the defendant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Westberry has not made a substantial showing that he was denied his constitutional rights such that reasonable jurists would find this Court's assessment debatable or wrong. Thus, a Certificate of Appealability will not be issued.

## IV.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. Magistrate Judge Stinnett's Report and Recommendation [Record No. 237] is **ADOPTED** and **INCORPORATED** by reference.

2. Defendant/Movant Westberry's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [Record No. 230] is **DENIED**. His claims are **DISMISSED**, with prejudice, and **STRICKEN** from the Court's docket.

3. Defendant/Movant Westberry's objections to the Report and Recommendation [Record No. 238] are **OVERRULED**.

4. A Certificate of Appealability will not issue.

Dated: November 27, 2019.

*Danny C. Reeves, Chief Judge*
United States District Court
Eastern District of Kentucky