UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal Action No. 5: 15-114-DCR |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| NAVARIUS SAVELL WESTBERRY, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Navarius Westberry pleaded guilty on August 15, 2016, to conspiring to distribute more than 100 grams of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 1), and a charge of conspiracy to distribute fentanyl, the use of which resulted in the overdose death of Corey Brewer, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 2). [Record Nos. 102 and 171] The Court determined Westberry's Adjusted Offense Level under the United States Sentencing Guidelines to be 49, producing a Total Offense Level of 43. [*See* Record No. 175, ¶¶ 42, 45.] This, in turn, resulted in a Guidelines range of 40 years' imprisonment on Count 1 (the statutory maximum under 21 U.S.C. § 841(b)(1)(B)) and life imprisonment on Count 2. [*See id.* at ¶¶ 67-68.] The Court sentenced Westberry on January 9, 2017, to concurrent Guidelines-range terms of 40 years' imprisonment on Count 1 and life imprisonment on Count 2, with a life term of supervised release. [Record No. 171]

Westberry has filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), asking that the Court "grant [him] time-served and/or a reduction in sentence." [Record Nos. 291 and 291-1, p. 11] The first substantive portion of his argument is dedicated

- 1 -

to attempting to establish that his crimes of conviction are "covered offenses" for the purposes of Section 404(a) of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018). [Record No. 291-1, pp. 4-6] The "covered offense" language of the First Step Act pertains to offenses "affected by the former disparity between sentences imposed for crack and powder cocaine offenses," and Section 404 allows courts to reduce sentences for crack cocaine offenders "retroactively[,] to account for the changes established by the Fair Sentencing Act." *United States v. Maxwell*, 991 F.3d 685, 689 (6th Cir. 2021). Section 603 of the First Step Act amended § 3582(c)(1)(A) to allow defendants to bring compassionate release motions for sentence reductions, but this provision of the Act does not limit relief to prisoners with "covered offenses" as defined by Section 404(a). *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239 (2018). Westberry was not convicted of a "covered offense," but the "covered offense" provision of the First Step Act does not apply or inhibit his ability to bring the present motion.

Westberry primarily asserts that one "extraordinary and compelling reason" supports a sentence reduction under § 3582(c)(1)(A)(i): an unwarranted sentencing disparity.[1] [*See* Record No. 291-1, pp. 6-10.] He argues both that the disparity between his life sentence and

---

[1] The defendant also claims, without any explanation or argument, that relief is appropriate due to "the fact that 'change in sentencing laws' has been changed from 20 to 15 years minimum mandatory." [Record No. 290] This appears to reference the 20 year statutory minimum required for Count 2. [*See, e.g.*, Record No. 175, ¶ 67.] But the applicable provision, 21 U.S.C. § 841(b)(1)(C), continues to impose a statutory minimum of 20 years' imprisonment for certain drug offenses resulting in death or serious bodily injury. And Westberry was not sentenced to the statutory minimum on Count 2. Instead, he received the statutory maximum, which was a Guidelines-range sentence. *See* 21 U.S.C. § 841(b)(1)(C). Thus, to the extent he references statutory minimums in an attempt to demonstrate an extraordinary and compelling reason for his release, his assertions have no merit.

the sentences of his co-defendants justifies relief and that there is a disparity between his sentence and the national average for similarly-situated defendants. [*Id.* at pp. 7-10.] Westberry specifically takes issue with the 220-month sentence of co-defendant Dion Taylor and 262-month sentence of co-defendant Benjamin Robinson.[2] [*See id.* at p. 7; *see also* Record Nos. 133 and 181.] And he cites a number of cases, from this district and elsewhere, in an attempt to demonstrate a national sentencing disparity. [*Id.* at pp. 8-10.]

The United States Court of Appeals for the Sixth Circuit recently addressed an argument similar to Westberry's. In *United States v. Hunter*, the district court found that several factors, including "the 'sentencing disparities' between the moving defendant and three particular co-defendants who pleaded guilty and testified for the government at trial," constituted extraordinary and compelling reasons for a reduction of the defendant's life sentence to time-served. 12 F.4th 555, 560-61 (6th Cir. 2021). The Sixth Circuit disagreed, holding that this was an "impermissible factual consideration[] because [that] fact[] existed at sentencing." *Id.* at 569.

In reaching this conclusion, the court first explained that Congress has established a general rule of finality for criminal judgments, with limited exceptions such as those found in § 3582(c). *Id.* But the court noted that the "extraordinary and compelling reasons" compassionate release "exception in § 3582(c)(1)(A)(i) is not an open-ended invitation to simply relitigate and reweigh the [18 U.S.C.] § 3553(a) factors based on facts that existed at

---

[2] Taylor pleaded guilty to Count 1, while Robinson pleaded guilty to Count 3, conspiracy to distribute fentanyl resulting in serious bodily injury to Alyssa Silvia, in violation of 21 U.S.C. §§ 841(a)(1) and 846. [*See*, *e.g.*, Record No. 213, p. 2.] Both co-defendants received death-results upward departures pursuant to U.S.S.G. §§ 5K2.1 and 5K2.21 for their roles in Brewer's death, which was charged in Count 2. [*Id.* at p. 3.]

sentencing." *Id.* Instead, the statute explicitly contemplates that courts, *inter alia*, conduct distinct analyses of whether defendants have established extraordinary and compelling reasons for their release and whether the § 3553(a) factors weigh in favor of a sentence reduction. *See id.* (citing *United States v. Elias*, 984 F.3d 516, 518-19 (6th Cir. 2021); *United States v. Ruffin*, 978 F.3d 1000, 1004-05 (6th Cir. 2020)). "Finding an 'extraordinary and compelling' reason for a sentence reduction is a separate requirement [of § 3582(c)(1)(A)(i)], so it cannot be synonymous with a § 3553(a) analysis," which includes consideration of unwarranted sentencing disparities in accordance with § 3553(a)(6). *Id.*

This "understanding [of] § 3582(c)(1)(A)'s text and structure, together with its narrow scope, show that identifying 'extraordinary and compelling reasons' is a task that focuses on *post-sentencin*g factual developments." *Id.* (emphasis added). "A court must first find that the facts of *the defendant's* personal circumstances changed after sentencing in a way that is 'extraordinary and compelling,' before a court is permitted to weigh (or revisit) the § 3553(a) factors." *Id.* (emphasis in original) (citing *Setser v. United States*, 566 U.S. 231, 243 (2012)). And this necessarily means that "facts that existed at sentencing cannot later be construed as 'extraordinary and compelling reasons' to reduce a final sentence." *Id.*

But the distinction between the "extraordinary and compelling reasons" and § 3553(a) factor balancing requirements of § 3582(c)(1)(A), as well as the corresponding focus on changed personal circumstances of defendants in "extraordinary and compelling reasons" analyses, also indicate that sentencing disparity arguments premised on sentences imposed *after* that of the movant cannot form the grounds for a sentence reduction under the statute. Indeed, *Hunter* confirmed as much. *See id.* at 571-72. ("Lastly, even if the sentence disparity did not exist at the time Hunter was sentenced, subsequent leniency in another defendant's

- 4 -

case says nothing about how Hunter's personal circumstances have changed since he was sentenced.").

Thus, *Hunter* forecloses relief on the grounds asserted by Westberry.  One of the relevant co-defendants, Robinson, was sentenced on October 14, 2016, prior to Westberry's sentencing hearing.  [*See* Record No. 133.]  And at least four of the other cases cited by the defendant in support of his claim that there is an unwarranted sentencing disparity involve sentences imposed prior to his sentencing hearing.  *See Coleman v. Terris*, No. 19-1886, 2020 U.S. App. LEXIS 13436, at *1 (6th Cir. Apr. 24, 2020) (unpublished) (365-month sentence of 28 U.S.C. § 2241 petitioner imposed in 2007); *Gaylord v. United States*, 829 F.3d 500, 504 (7th Cir. 2016) (240-month sentence imposed on December 9, 2011); *United States v. Rebmann*, No. 5: 16-cr-028, Record No. 38 (E.D. Ky. 2016) (360-month sentence imposed on December 13, 2016); *United States v. Allen*, No. 5: 15-cr-113, Record No. 40 (E.D. Ky. 2016) (365-month sentence imposed on September 1, 2016).  *Hunter's* holding expressly forbids the Court from finding extraordinary and compelling reasons premised on what Westberry claims to be the relevant facts of these cases, *i.e.*, the length of the defendants' sentences, because they were in existence at the time he was sentenced.

And the differences between Westberry's sentence and that of Taylor, who was sentenced after Westberry on February 14, 2017 [Record No. 181], or defendants in other cases with sentences imposed after he was sentenced likewise fail to constitute extraordinary and compelling reasons for a sentence reduction.  To conclude otherwise would risk conflating the extraordinary and compelling reasons and § 3553(a) analyses in contravention of § 3582(c)(1)(A)'s text.  And as *Hunter* indicates, subsequent leniency shown to other defendants does not illuminate how Westberry's personal circumstances have changed in an extraordinary

and compelling manner.  The present motion will be denied because Westberry has not stated any extraordinary and compelling reason for release or a sentence reduction.

Notwithstanding this conclusion, the Court determines that the relevant § 3553(a) factors weigh strongly against a sentence reduction.  Westberry argues that the factors weigh in his favor because he: has no record of violence, helps with daily prison operations, maintains a clean prison disciplinary record, and has completed a number of educational courses while incarcerated.  [Record No. 291-1, pp. 10-11]  He further believes that the purposes of specific and general deterrence will be served with his release or a reduction in sentence and that relief will cure the sentencing disparity he has raised.  [*Id.* at p. 11.]

Westberry is originally from Detroit, Michigan.  [Record No. 175, ¶ 55]  He came to Madison County, Kentucky and set up a drug trafficking organization that imported controlled substances from Detroit.  [*See*, *e.g.*, *id.* at ¶¶ 5, 20; Record No. 189, p. 101:10-15.]  He was the leader of this organization, with Taylor and Robinson, among others, serving under him.  [*See*, *e.g.*, Record Nos. 175, ¶¶ 18, 20 and 189, p. 101:10-17]  On January 15, 2015, Alyssa Sylvia overdosed on fentanyl obtained from the defendant's organization.  [Record No. 175, ¶ 5]  In March of 2015, James Riddell and Virginia Walker also overdosed on controlled substances supplied by this organization.  [*See* Record No. 189, pp. 41:17-45:20.]  On March 14, 2015, Corey Brewer was found dead, having overdosed from fentanyl supplied by Westberry's organization.  [*See*, *e.g.*, Record No. 175, ¶ 10.]  And despite knowledge of these tragedies, the defendant continued to traffic controlled substances through his organization.  [Record No. 189, p. 98:7-13.]  In sum, the nature and circumstances of the offense continue to weigh in favor of the sentence imposed.  *See* 18 U.S.C. § 3553(a)(1).

And while the defendant may not have an extensive criminal history, his prior conviction is very serious.  In 1999, roughly 17 years before he committed the crimes in this case, he was convicted of possessing of cocaine in connection with a drug dealing incident involving a significant amount of controlled substances and firearms in Marion, Ohio. [Record No. 175, ¶ 48] The circumstances of the offense as provided for in the Presentence Investigation Report indicate that Westberry was "the ringleader of [] six Detroit defendants who traveled to Marion, Ohio . . . to sell illegal drugs." [*Id.*]  As the Court noted during the sentencing hearing, the defendant "[had not] really changed his ways or his attitude" between this prior crime and the incidents that led to this case.  [Record No. 189, p. 101:9-10] Moreover, the defendant lied throughout this proceeding when he thought it would benefit his cause.  The Court imposed a two-level obstruction of justice enhancement under U.S.S.G. § 3C1.1 because the defendant perjured himself when he attempted to withdraw his guilty plea, providing false testimony about drug quantities and his responsibility for Brewer's death while also falsely claiming that he was under the influence of controlled substances when he entered his plea.  [*See*, *e.g.*, Record Nos. 175, p. 42 and 189, pp. 75:8-77:5.]  His prison conduct, including the classes he has taken, is no doubt commendable, but his history and characteristics continue to support the sentence imposed.  *See* 18 U.S.C. § 3553(a)(1).

Westberry's sentence also reflects the seriousness of the offenses, promotes respect for the law, and provides a just punishment for his crimes.  18 U.S.C. § 3553(a)(2)(A).  As the Court indicated during the sentencing hearing, offenses cannot be much more serious than those at issue here, and Westberry's lies under oath and behavior underlying this case demonstrate a significant lack of respect for the law.  [Record No. 189, p. 103:1-6]  A

Guidelines-range sentence is not unjust, even after due consideration is given to Westberry's rehabilitative efforts in prison. [*See id.*]

Next, the Court is not convinced that a sentence reduction would provide for adequate deterrence or protect the public from future crimes of the defendant. 18 U.S.C. § 3553(a)(2)(B)-(C). The undersigned explicitly accounted for the defendant's potentially advanced age of release when considering the merits of a variance, but concluded that "there's no indication that he would not return to criminal activity." [*Id.* at p. 103:21-24.] This determination stands. Westberry served over 5 years in prison as a young man for his Ohio conviction but nonetheless returned to lead another drug trafficking operation years later with devastating consequences that he ignored. [*See* Record No. 175, ¶ 48.] His prison record evidences a new level of maturation, but the Court's prior concerns predominate.

Westberry's motion focuses on § 3553(a)(6)'s "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." This factor, as Westberry appears to understand, refers to sentencing disparities on a national scale among defendants with similar criminal records.[3] *See, e.g.*, *United States v. Bass*, ---F.4th---, 2021 WL 5099583, at *4 (6th Cir. Nov. 3, 2021); *United States v. Simmons*, 501 F.3d 620, 623-24 (6th Cir. 2007).

---

[3] Sentencing courts are not required to consider sentences imposed for co-defendants when weighing the § 3553(a) factors, although they have the discretion to do so. *See, e.g.*, *Bass*, ---F.4th----, 2021 WL 5099583, at *4. To the extent the defendant asks the Court to reduce his sentence based on the sentences given to Taylor and Robinson, such relief is not appropriate. One reason for this conclusion is the fact that Westberry was Taylor and Robinson's superior in the drug trafficking operation. *See United States v. Carter*, 510 F.3d 593, 603 (6th Cir. 2007) (finding no abuse of discretion regarding a § 3553(a)(6) determination where the district court concluded, *inter alia*, that a co-defendant with a lower sentence was not the "prime mover" in the criminal enterprise). Additionally, the § 3553(a) factors, on balance, weigh in favor of Westberry's original sentence.

The Court imposed a Guidelines-range sentence on both counts of conviction. "The point of the guidelines is to decrease sentencing disparities, an objective *furthered* by a within-guidelines sentence, as opposed to a sentence that varies above or below the advisory guidelines range." *United States v. Swafford*, 639 F.3d 265, 270 (6th Cir. 2011) (emphasis in original). Accordingly, a below-Guidelines sentence "is more likely to create disparities than eliminate them."[4] *Id.*

Further, the Sixth Circuit has cautioned against the § 3553(a)(6) approach advocated by Westberry. "[C]omparison of [a] defendant's sentence to those imposed in other singular cases [is] weak evidence to show a national sentencing disparity." *United States v. Rossi*, 422 F. App'x 425, 435 (6th Cir. 2011) (citing *United States v. Thomas*, 395 F. App'x 168, 175 (6th Cir. 2010)); *accord Simmons*, 501 F.3d at 626. The problem with such an exercise is that it "opens the door to endless rummaging by lawyers [or defendants] through sentences in other cases, each side finding random examples to support a higher or lower sentence, as their . . . interests dictate." *Thomas*, 395 F. App'x at 175 (quoting *United States v. Saez*, 444 F.3d 15, 19 (1st Cir. 2006)). A better indication in this case of a true national sentencing disparity would be evidence of a significant percentage of courts varying downward from the Guidelines range for defendants similarly situated to Westberry. *See id.* However, such would not be controlling.

---

[4] Westberry has served roughly 68 months of his sentence. [*See* Record No. 291-3, p. 1.] Although his motion is somewhat open-ended in that it requests either a marginal sentence reduction or time-served, the Court observes that the latter relief would seem particularly likely to create a sentencing disparity because the defendant's Guidelines range provided for 40 years' imprisonment on Count 1 and life imprisonment on Count 2.

Westberry does not come remotely close to making such a showing.  Indeed, he largely points to the sentences imposed in the cases he cites [*See* Record No. 291-1, pp. 8-10], without considering whether most of the defendants in those cases were similarly situated in other respects.  *See*, *e.g.*, *Carter*, 510 F.3d at 603.  And he points to individual cases rather than identifying evidence of a significant national trend of courts granting variances to similarly-situated defendants.  The Court concludes that the Guidelines-range sentence imposed remains appropriate and does not risk creating an unwarranted sentencing disparity.

All relevant § 3553(a) factors counsel against a sentence reduction.  Thus, even if the defendant could establish extraordinary and compelling reasons for relief, release or a sentence reduction is not warranted in this case.  Accordingly, it is hereby

**ORDERED** that Defendant Westberry's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) [Record No. 291] is **DENIED**.

Dated:  November 4, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky